FOURNET, Justice
 

 (dissenting on rehearing) .
 

 The majority opinion on rehearing is based on the erroneous assumption that “The facts of this case bring it within the doctrine of the case of James v. J. S. Williams & Son, 177 La. 1033, 150 So. 9 * * A mere reading of that case will conclusively show, as was demonstrated in our original opinion, that the facts of this case are distinctly different from
 
 *801
 
 those in the James case. In that case the scope of the duties of the employee Rhodes was limited to driving a funeral car and it was
 
 "after the day’s work was done”
 
 that he took the funeral car, at the request of a helper in the establishment by the name of Jemison, to take him (Jemison) home, whereas in the instant case the employee Chaney was the superintendent and manager of the town’s light and water plant, of which he was in complete charge and “Among his many duties were the overseeing of the installation of hotise connections and the extension of water mains, and, in the event of fire, to be present at the plant and assure the maintenance of an adequate water pressure. He was required to go to various parts of the town whenever necessary,
 
 whether day or night.
 
 * * * ” (Italics ours.) To be available at all times was an
 
 essential
 
 requirement of his employment.
 
 His day’s work was
 
 never done.
 

 The error into which the majority opinion fell is further demonstrated when it said: “It is remarkable how like the present case was the case of Johnson v. City of Iola, 109 Kan. 670, 202 P. 84 * * That case, in my opinion, is like the James case in that the accident occurred
 
 after working hours.
 

 The next case cited is that of Fox v. City of Syracuse, 231 App.Div. 273, 247 N.Y.S. 429. In that case, however, the accident occurred while the city employee
 
 was on a customary week-end visit to a certain beach for his personal recreation.
 
 While there he incidentally transacted his superior’s business and
 
 on the way back
 
 the collision occurred. Clearly that case can have no application to the case at bar.
 

 Keeney v. City of Salem, 150 Or. 667, 47 P.2d 852, is next cited. In that case a policeman wa.s directed by his chief to take the mayor from the city hall to his home in a car maintained by the city for the use of the police department. An accident occurred and the city was not held liable. That case is equally inapplicable, as the court pitched its decision on the facts that the city council never “* * * authorized the police department to use a city automobile to convey'the mayor to or' from the city hall;
 
 nor is it asserted that it was within the scope of the cmthority of the city
 
 * * * to supply taxi service for the private ‘matter of convenience and accommodation’ of the mayor of the city.” (Italics ours.)
 

 The majority opinion, after quoting the above cases, concludes with quotations from Blashfield’s Cyclopedia of Automobile Law and Practice, Mechem on Agency, and the Restatement of the Law of Agency. The general rules quoted therefrom are no doubt sound and we could approve them, without, however, detracting from our original opinion.
 

 The basis of the city’s liability may well be stated in the language used in the Restatement of the Law of Agency, Section 214, at page 472:
 

 “By contract, however, or by entering into
 
 certain relations
 
 with others, a person may become responsible for harm caused to them by conduct of his agents or servants not within the scope of employ
 
 *803
 
 ment;
 
 the extent of this liability depends upon the duty assumed."
 
 (Italics ours.)
 

 In my opinion the scope of the duties of Chaney’s employment may be compared with those entrusted to Fausnacht in the case of Black v. Rock Island A. & L. R. Co., 125 La. 101, 51 So. 82, 84, 26 L. R.A.,N.S., 166. An effort is made in the majority opinion to distinguish that case from the instant one on the ground that the basis of the court’s decision in that case was that- the defendant Rock Island Company “ * • * * being vested with a franchise (that is to say, a privilege conferred upon them by the state, and not enjoyed by citizens generally of common right), by virtue whereof they were authorized to lay their tracks across a public thoroughfare in an incorporated town, and to operate cars propelled by steam power thereon, incurred certain correlative obligations, and among them the obligation to use their franchise with due regard to the public safety.”
 

 I think that this case is “on all fours” with the Black case. In the present case the light and water plant of the. municipality was operated by sufferance of legislative authority (Act 136 of 1898, as amended by Act 181 of 1914 and Act 135 of 1916) and the injury was occasioned by an instrumentality that was incidental to the use of that privilege, i. e., an automobile used to discover what work or repair was necessary to be made by the light and water plant. The privileges granted to the railroad company and to the light and water plant of the City of Lake Providence are both
 
 -privileges
 
 granted for purposes of public utility and both are charged with the duty to use carefully the instrumentalities connected with and incidental to their operation.
 

 The statement made in the Black case, immediately following the quotation therefrom in the majority opinion, is peculiarly applicable to the facts of this case. “ * * * The
 
 defendants
 
 themselves,
 
 being mere intellectual and intangible creations, have no capacity to act otherwise than through their human representatives,
 
 and they can be present at the place where their interests or obligations require that they shall be present, and there act only through such representatives;
 
 and,
 
 on the other hand,
 
 when they authorize certain actual persons to represent them dt a particular place and time 'with respect to such interests and obligations, and the persons are there, discharging the functions for which they are authorized, the'corporations themselves are there discharging those functions in the only way in which they can discharge them, and the acts of the persons representing them are the acts of the corporations.
 
 * * * ”
 

 Paraphrasing the statement that follows the above quotation, it can be said that the Town of Lake Providence was in possession of its plant and the automobile used in connection therewith for the operation thereof through Chaney, its agent and superintendent. Unlike Fausnacht, however, Chaney had full and complete authority with reference to the operation and maintenance of the plant, the sole exception being the hiring of certain fixed employees, which had to be appointed with the approval of the town’s mayor and aldermen.
 

 
 *805
 
 In the opinion of that case, the court, in summing up its conclusion upon the law of the case, stated:
 

 “Where the agents of a railroad company are placed in charge and control of its depot, locomotives, and tracks in a town, with authority to operate the locomotives over the tracks for switching and other purposes (connected with the business of the company), and with actual power to operate them when they please, and the agents, whilst operating them for their own amusement across a street of the town, negligently injure a citizen, who is legitimately using the street, such agents will be held to be acting, though improperly, within the scope of the authority conferred on them, and the company will be held liable for the injury resulting from' such action.
 

 “The right to operate a steam locomotive on, or across a street in a town involves the use of an agency highly dangerous to life, limb, and property, and the responsibility for the exercise of such right cannot be shifted by the corporation in which it is vested to the person, who, by its authority, actually exercises it.”
 

 Chaney was unquestionably the agent of the Town of Lake Providence and was in full charge and control of its water and light plant, and he also had the complete use and control of the automobile which was furnished him to carry out his duties in connection therewith. In fact, it was his
 
 duty
 
 to have the automobile instantly available for use twenty-four hours a day. In my opinion these facts bring the case squarely within the doctrine announced in the case of Black v. Rock Island A. & L. R. Co., supra.
 

 I think the foregoing clearly demonstrates the error into which the author of the majority opinion fell and, in my humble opinion, strengthens the views expressed in the original opinion.
 

 For the foregoing reasons and those assigned in the original opinion, I respectfully dissent.